784 So.2d 605 (2001)
James REID, Appellant,
v.
STATE of Florida, Appellee.
No. 5D00-570.
District Court of Appeal of Florida, Fifth District.
May 18, 2001.
James B. Gibson, Public Defender, and M.A. Lucas, Assistant Public Defender, Daytona Beach, for Appellant.
*606 Robert A. Butterworth, Attorney General, Tallahassee, and Mary G. Jolley, Assistant Attorney General, Daytona Beach, for Appellee.
THOMPSON, C.J.
James Reid appeals his conviction for shooting into an occupied vehicle. We reverse the conviction because the state, after having exculpatory testimony excluded from the trial, then argued to the jury that the absence of such evidence belied Reid's self-defense theory.
Reid was charged with two counts of attempted second degree murder and shooting into an occupied vehicle. The jury acquitted him of the attempted murder charges. Reid testified that he shot at the vehicle because in the darkness he thought the vehicle was occupied by his wife's uncle, with whom he had had problems, and that the uncle was trying to run him down. The vehicle was actually occupied by Stephen Frank and Shane Hier, who had met Reid for the first time that night. Reid, Hier and Frank all testified that there were no ill-feelings among them. Frank knew Reid's wife, and brought his friend Hier to the Reid residence so that Hier, a loan officer, could advise the Reids about refinancing their home. During the shooting, Hier and Frank fled the scene and contacted police, who arrested Reid at his home or at the home of his neighbors. Reid and the neighbors, Linda and Bruce Weber, testified that Reid went to their home after the shooting because Reid thought Linda Weber, a corrections officer, was a deputy sheriff. The Webers testified that they thought Reid was surrendering, but Reid testified that he was making himself available for questioning.
Prior to trial, the state moved for an order in limine excluding "self-serving" hearsay statements made by Reid to witnesses. The court reserved ruling at that time, but the defense pointed out that the arresting officer was prepared to testify about several statements made to him by Reid. The defense argued that if some statements made to the officer were admitted, all statements should be admitted. Later, the arresting officer testified that Reid had said that "fags were trespassing on [his] property," that Reid did not know who the people were, that he had been alone, and that he did not know what the deputy was talking about.
Based on the motion in limine and an objection from the state, the Webers were not permitted to testify about exculpatory statements made to them by Reid. During closing, however, over the objections of the defense, the prosecutor argued:
Probably the most important thing that came out of the Webers' testimony was something they didn't say. They said the defendant came over and turned himself in and that he had been the one who had fired off these shots.
But I want you to remember, did they ever say that the defendant told them
* * *
Did they ever say that the defendant told them that these guys tried to run me over? No, they did not. That's because that was a convenient-one of the convenient statements that the defendant had made earlier that he chose to go with today.
We agree with Reid that the argument was improper:
The prosecutor's use of the privilege of nondisclosure, first as a shield, then as a sword, unfairly prejudiced the defendant. While the State is free to argue to the jury any theory of a crime that is reasonably supported by evidence, it may not subvert the truth-seeking function of a trial by obtaining a conviction *607 or sentence based on the obfuscation of relevant facts.
Gonzalez v. State, 774 So.2d 796, 798 (Fla. 3d DCA 2000) (error to obtain order disallowing disclosure of confidential informant's identity, and then argue to jury lack of evidence to prove defense contention that particular individual was confidential informant, and that confidential informant planted evidence); see also, Garcia v. State, 564 So.2d 124 (Fla.1990) (error to obtain order excluding payroll records and then argue to jury non-existence of records showed invalidity of defense). Because there is no showing that the error did not affect the verdict, we reverse the judgment and sentence. See State v. DiGuilio, 491 So.2d 1129 (Fla.1986).
JUDGMENT AND SENTENCE REVERSED.
COBB and PLEUS, JJ., concur.